UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED GOLF, LLC, an Oklahoma corporation; and NORTHEASTERN IRRIGATION & LANDSCAPE, INC., an Oklahoma corporation, , | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 05-CV-0495-CVE-PJC |
| WESTLAKE CHEMICAL CORPORATION, a Delaware corporation; and NORTH AMERICAN PIPE CORPORATION, a Delaware corporation,, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Now before the Court is Defendants' Motion to Dismiss and Brief in Support (Dkt. # 20). Defendants motion to dismiss is a partial motion to dismiss alleging that: (1) plaintiffs have no basis to assert a subrogation right under their contract with the City of Tulsa ("the City"); and (2) plaintiffs' sole remedy for alleged deficiencies with the pipes plaintiffs purchased is provided by the Uniform Commercial Code ("UCC").

## I.

Plaintiffs United Golf, LLC ("United Golf") and Northeastern Irrigation & Landscape, Inc. ("Northeastern") allege that they were awarded a contract by the City to install a new sprinkler system at the Page Belcher Golf Course in Tulsa, Oklahoma. United Golf was the general contractor and Northeastern was retained as a subcontractor to perform the installation. Plaintiffs purchased polyvinyl chloride ("PVC") pipes from a distributor, and plaintiffs allege that the pipes were designed and manufactured by Westlake Chemical Corporation ("Westlake") and North American

Pipe Corporation ("North American").  Sometime after the pipes were installed, many of the pipes began to leak.  The leaks caused the sprinkler system to fail, resulting in too much water in some places on the golf course and not enough water in other places.  Plaintiffs had to remove the pipes and replace them with pipes from a different manufacturer.

When plaintiffs removed the pipes, they had to tear up significant sections of sod to dig below the surface to access the pipes.  Under plaintiffs' contract with the City, they were required to replace the pipes and pay for replacement of the sod.  Asserting subrogation rights under the contract, plaintiffs sued North American and Westlake[1] for products liability, breach of implied warranty, and negligence.[2]  Plaintiffs allege that defendants designed and manufactured defective pipes.  Plaintiffs also allege that defendants acted negligently by designing defective pipes, causing damage to the golf course, and failing to warn plaintiffs the pipes could leak.  Defendants argue that the economic loss rule recognized by the Oklahoma Supreme Court bars plaintiffs' claims for manufacturers' products liability and negligence.  According to defendants, plaintiffs may not seek recovery under a tort theory when the only injury they complain of is damage to the subject product.  Plaintiffs claim that they have also pled damages for replacing sod in order to access the damaged pipes, which is sufficient to state a products liability claim for damage to other property.

## II.

---

[1]     Plaintiffs have filed a stipulation of dismissal with prejudice of Westlake, leaving North American as the sole defendant.

[2]     Plaintiffs have asserted several varieties of products liability and negligence claims, including: (1) products liability -- design defect; (2) products liability -- manufacturing defect; (3) products liability -- failure to warn; (5) negligent damage to property; (6) negligent design defect; (7) negligent manufacturing; and (8) negligent failure to warn.

When reviewing a motion to dismiss under Rule 12(b)(6), the court must construe the allegations of the complaint as true and view the allegations in the light most favorable to the nonmoving party.  Moffett v. Halliburton Energy Services, Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  A Rule 12(b)(6) motion "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Sutton v. Utah State School for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

## III.

North American raises two primary arguments in its motion to dismiss.  First, defendant argues that plaintiffs have failed to state a basis for equitable subrogation and may not pursue products liability or negligence claim for injuries to the City.  Second, defendant argues that the economic loss rule prevents plaintiffs from proceeding with their claim for products liability and negligence, because their alleged injury is harm to the product itself and consequential economic damages.

## A.

Plaintiffs have based their right to bring claims against North American on an alleged right of equitable subrogation under their contract with the City.  The Oklahoma Supreme Court has recognized the doctrine of equitable subrogation, but has provided few bright lines rules for its application. Sexton v. Continental Cas. Co., 816 P.2d 1135, 816 P.2d 1135, 1138 (Okla. 1991); Republic Underwriters Ins. Co. v. Fire Ins. Exchange, 655 P.2d 544, 546 (Okla. 1982); Lawyers' Title Guar. Fund v. Sanders, 571 P.2d 454, 456 (Okla. 1977); Rice-Bell Partnership v. Capitol Indem. Corp., 8 P.3d 189, 192 (Okla. Civ. App. 2000).  Equitable subrogation is a purely equitable doctrine

3

> based on the relationship of the parties and equitable principles of establishing substantial justice, and it is broad enough to include every instance where one person who is not a mere volunteer, pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter.

United States Fidelity and Guar. Co. v. Federated Rural Electric Ins. Corp., 37 P.3d 828, 831 (Okla. 2001).  North American argues that plaintiffs never received an assignment of rights from the City to pursue a subrogation claim and that it is not primarily answerable for any debt to the City.

The Court does not find that dismissal as a matter of law would be appropriate, because of the fluid and fact specific nature of equitable subrogation.  Plaintiffs were not required to seek a formal assignment or transfer of rights from the City before alleging a right to equitable subrogation. "Equitable subrogation . . . does not depend upon a contract but arises by implication in equity to prevent an injustice." Id.  Plaintiffs have alleged a basis for equitable subrogation by stating that they entered a contract with the City and were required to pay for repairs due to defendants' defective pipes.  Construing the facts in favor of plaintiffs, it is possible that plaintiffs incurred a debt to replace and reinstall pipes which defendants had a duty to guaranty under warranty.  This satisfies the pleading requirements for equitable subrogation.  The Court may not weigh the facts to determine if the equities will inevitably support plaintiffs' claims, because plaintiff has stated sufficient facts to allege an equitable right to recovery.  The law does not clearly favor dismissal of plaintiffs' claims based on a failure to plead a right to equitable subrogation and defendants' motion to dismiss is denied on the issue of equitable subrogation.

## B.

North American asserts that plaintiffs are barred from proceeding with products liability or negligence claims against it, because plaintiffs' exclusive remedy is provided by the UCC.

Oklahoma recognizes the economic loss rule, which provides that a manufacturers' products liability claim is not available "for injury only to the product itself resulting in purely economic loss." Waggoner v. Town & Country Mobile Homes, Inc., 808 P.2d 649, 653 (Okla. 1990). The reasoning of Waggoner applies to the full range of unintentional torts, precluding negligence or products liability claims when the UCC provides a comprehensive remedy for plaintiff's economic injury. Id. at 652-53. Plaintiffs respond that, in order to repair and reinstall the leaking pipes, they were required to remove sod from the golf course, and that they are seeking damages for something more than replacing the allegedly defective PVC pipes.

Oklahoma adopted the economic loss rule stated by the Supreme Court in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986), where the Court held that a products liability claim was not available in admiralty cases when the only injury suffered by plaintiff was harm to the product itself. Id. at 874-75. In cases where the only harm is to the product, the underlying rationale for products liability claims -- protecting the general public from accidental injury -- is significantly weakened. Id. at 871. The Oklahoma Supreme Court adopted this rule in Waggoner, where the plaintiffs' only injury was to the mobile home they purchased from the defendant manufacturer. The Waggoner court stated:

> The facts of this case involve only economic loss and disappointment associated with manufacturer's unsuccessful attempts to remedy condensation within consumers' mobile home. No personal injury or damage to other property occurred. Damage was limited to the product itself. Therefore, any recovery must be based upon the contractual relationship, specifically the warranty provisions, express or implied.

Id. at 653. In cases where the plaintiff suffers economic injury only, the proper remedies are provided by the warranty provisions of the UCC.

5

The Oklahoma Supreme Court has amended the economic loss rule in two important ways. The economic loss rule does not apply in any case where the plaintiff is alleging a personal injury from using an allegedly defective and unreasonably dangerous product. <u>Dutsch v. Sea Ray Boats, Inc.</u>, 845 P.2d 187, 193-94 (Okla. 1992) (plaintiff could collect damages for personal injury and damage to the product in a products liability action without bringing a separate breach of warranty claim to recover damages for economic loss). However, when plaintiff alleges an economic injury for damage to the product itself and for consequential damages, such as to ancillary equipment, clean-up, repair, and reinstallation costs, the economic loss rule applies. <u>Oklahoma Gas & Electric Co. v. McGraw-Edison Co.</u>, 834 P.2d 980, 982 (Okla. 1992) ("damages to the product and consequential economic losses sounds in contract, not in manufacturers' products liability"). In order to resolve defendant's motion to dismiss, the Court must discuss the parameters of the economic loss rule as clarified in <u>Dutsch</u> and <u>Oklahoma Gas & Electic Co.</u>

In <u>Dutsch</u>, a motor boat exploded, causing the boat owner personal injuries and destroying the boat. 845 P.2d at 188. The owner sued the manufacturer using a manufacturers' products liability theory and recovered damages for his personal injuries and property loss. The manufacturer appealed, claiming that <u>Waggoner</u> prevented the boat owner from recovering for property damage to the defective product. The Oklahoma Supreme Court held that the economic loss rule did not preclude recovery for damage to the product in cases where the plaintiff was personally injured or suffered damage to other property. <u>Id</u>. at 193. The court focused on the presence of a personal injury and distinguished <u>Waggoner</u> based on the lack of a personal injury to the plaintiff in <u>Waggoner</u>. The court found that it would not be consistent with the policy supporting

6

manufacturers' products liability claims to require a plaintiff suffering a personal injury to bring two separate claims to recover for personal injuries and economic loss. Id. at 193-94.

In Oklahoma Gas & Electric Company, the Oklahoma Supreme Court was asked to answer a certified question from the Tenth Circuit, which was whether "a plaintiff in a manufacturers' products liability action [can] recover damages for injury to the allegedly defective product itself and consequential economic harm flowing from that injury." 834 P.2d at 981. The Oklahoma Supreme Court answered in the negative, finding that Waggoner prevented a plaintiff from using a tort claim to recover purely economic damages flowing from damage to a defective product. Id. In this case, the plaintiff purchased a three-phase power transformer designed by McGraw-Edison Company ("McGraw-Edison"). The transformer exploded, destroying the transformer and damaging equipment connected to the transformer. Plaintiff filed a products liability claim to recover "actual damages for injury to the allegedly defective transformer and ancillary equipment and consequential damages for clean-up, repair and reinstallation of the transformer, rental and handling of a temporary transformer and lost profits." Id. The Oklahoma Supreme Court found that this case was controlled by Waggoner, because there was no personal injury or damage to other property. In cases where the "buyer's economic expectations are adequately protected by the warranty provisions of the Uniform Commercial Code," no unintentional tort claim is available. Id. at 982. However, the court did not define the terms "consequential damages" or "other property," leaving those questions open.

Plaintiffs do not dispute that they are seeking damages for "the repair and replacement of the sprinkler system and the replacement of damaged sod at the Page Belcher Golf Course." Plaintiffs claim that the damaged sod qualifies as "other property" under Waggoner and Dutsch, and that this

case does not fall under the economic loss rule.  To date, the Oklahoma Supreme Court has not clarified what was intended by the term "consequential damages" in Oklahoma Gas & Electric Co. However, the UCC does provide a definition:

> (2) Consequential damages resulting from the seller's breach include
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

Okla. Stat. tit. 12A, § 2-715.  Subsection (b) is directly on point and provides strong evidence that the Oklahoma legislature intended claims such as plaintiffs' to be governed by the UCC instead of tort law.  The UCC provides a remedy to a buyer for "all damages resulting from his breach if they arise from circumstances that the seller knew about or had reason to know about, even if he did not consciously assume the risk of such liability." Atlan Indus., Inc. v. O.E.M., Inc., 555 F. Supp. 184, 190 (W.D. Okla. 1983).  The Oklahoma Supreme Court has focused on the foreseeability of damages to determine if the alleged harm qualifies as consequential damages under the UCC. John A. Brown Co. v. Shelton, 391 P.2d 259, 263-64 (Okla. 1964).  In Perry v. Lawson Ford Tractor Co., 613 P.2d 458 (Okla. 1980), a farmer sued a tractor manufacturer for crop losses because the manufacturer sold a defective tractor.  The Oklahoma Supreme Court found the crop losses to be consequential damages, stating:

> The element of foreseeability circumscribes the outer limit of damages recoverable both ex contractu and ex delicto.  It is risk reasonably to be anticipated from the breach of an obligation.  Occurrence of crop loss while equipment designed and sold for use in harvesting remains disabled and repairs diligently made come too late for meaningful deployment of the machine in the field certainly is an event that flows naturally from the breach of implied warranty of fitness.  It is a loss well within the contemplation, and hence within the sweep, of the warrantor's assumed liability.

Id. at 464 n.13.

Plaintiffs' claim falls within the scope of the UCC and they can receive all of the damages they seek through their breach of warranty claim.  Moss v. Polyco, Inc., 522 P.2d 622, 625 (Okla. 1974).  This case falls squarely under Oklahoma Gas & Electric Co.  It was foreseeable that the surface of the golf course would be damaged if North American sold plaintiffs defective pipes that had to be replaced.  Plaintiffs did not incur any expense for the sod because they had an ownership interest in the sod.  They had a contractual duty to the City to repair the sprinkler system and clean up the golf course after performing their required repairs to the defective pipes.  In essence, the damage to the sod flowed from the breach of warranty and plaintiffs' interest in the sod arose from the breach of warranty.  In Oklahoma Gas & Electric Co., the injured plaintiff owned all of the damaged equipment, but as long the damages sought were economic in nature and could be considered consequential to the breach of warranty, the plaintiff could not pursue a tort claim.  In products liability cases for damage to other property, Oklahoma courts have allowed the claims because the defective product directly damaged other property owned by the plaintiff.  See Kimbrell v. Zenith Radio Corp., 555 P.2d 590 (1976) (defective wiring in television allegedly caused fire damage to plaintiff's home); Canadian Public School Dist. No. 2 v. McGraw-Edison Mfg. Co., 634 P.2d 782, 786 (Okla. Civ. App. 1981) (defendant's failure to keep pressure in gas lines caused plaintiff's school to burn down).  Here, the damage to the sod is a foreseeable injury flowing from the alleged defects with the pipes, and this is not the type of "other property" products liability claim allowed by Oklahoma law.

The present case is a classic breach of warranty case.  Defendants sold plaintiffs PVC piping that allegedly did not meet the required specifications.  Plaintiffs had to remove defendants' pipes

and reinstall new pipes from a different manufacturer to satisfy their customer.  Plaintiffs did not acquire the product as members of the general public, but instead, through a contract negotiated with defendants and its distributor.  Incidentally, some sod on the golf course was damaged because plaintiffs had to dig up the pipes in order to reinstall new PVC pipes for the sprinkler system. Although there may be cases where products liability and breach of warranty theories provide parallel types of relief, this case is not one of them.  The rationale for allowing a products liability claim in the present case is strained, because the primary reason for adopting a manufacturers' products liability cause of action was to protect members of the general public from injuries caused by defective products.  Allenberg v. Bentley Hedges Travel Serv., Inc., 22 P.3d 223, 227 (Okla. 2001) ("We recognized that manufacturers' products liability is founded upon public interest in human safety and that the rationale for adopting the rule is that the manufacturer of the product is responsible for the product reaching its market, and the manufacturer is best situated to provide protection against the risk of injuries caused by a defective product."); Waggoner, 808 P.2d at 652 ("[products liability] is independent of UCC warranty provisions because recovery under manufacturers' products liability arises from a duty to the public rather than from a contractual relationship"); Kirkland v. General Motors Corp., 521 P.2d 1353, 1362 (Okla. 1974) ("The rationale for such a rule is founded upon public interest in human safety . . .").  This is precisely the kind of case the Oklahoma Supreme Court intended to fall under Oklahoma Gas & Electric Co., because plaintiffs are adequately protected by UCC remedies and there is no risk of harm to the general public if plaintiffs are not allowed to pursue a products liability claim.  The Court finds that plaintiffs' tort claims should be dismissed, because the UCC provides the exclusive remedy for the purely economic recovery sought by plaintiffs.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and Brief in Support (Dkt. # 20) is **granted**; claims 1, 2, 3, 5, 6, 7, and 8 of plaintiff's First Amended Complaint (Dkt. # 13) are **dismissed**.

**DATED** this 15th day of August, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

11